591 So.2d 904 (1991)
Sam SKURNICK, Defendant/Appellant,
v.
Al AINSWORTH, Plaintiff/Appellee.
No. 76520.
Supreme Court of Florida.
September 12, 1991.
Rehearing Denied November 14, 1991.
Sam Skurnick, defendant/appellant in pro. per.
James F. Falco of Russell L. Forkey, P.A., Deerfield Beach, for plaintiff/appellee.
William G. Reeves, Gen. Counsel, Gary L. Printy and Frank Steele Jones, Asst. Gen. Counsel, Tallahassee, amicus curiae for State of Fla., ex rel. Gerald Lewis, Comptroller of Florida.
OVERTON, Justice.
The United States Court of Appeals for the Eleventh Circuit, in Ainsworth v. Skurnick, 909 F.2d 456 (11th Cir.1990), certified the following question:
Whether, under the undisputed facts of this case, the transactions between the parties constituted a sale of securities in Florida within the meaning of Fla. Stat. § 517.12.
Id. at 458. The issue in this cause is whether a securities broker in Connecticut and New York is making a sale of securities in Florida under section 517.12, Florida Statutes (1989), when he or she receives an order or check by mail from a Florida resident and acts on that request by purchasing stock or mutual funds in New York. We have jurisdiction,[1] and we answer the certified question in the affirmative.
The undisputed facts were set forth by the Circuit Court of Appeals in its opinion as follows:
Plaintiff Al Ainsworth is a Florida resident. After reading a 1976 article related to defendant Sam Skurnick's success with small market speculators, Ainsworth solicited Skurnick's services by mail. Mailing funds to New York where Skurnick is a registered broker, Ainsworth made a net investment of $1,100 which approximated $12,000 in 1985 when Ainsworth chose to terminate *905 Skurnick's discretionary authority over the securities account.
Ainsworth claimed damages against Skurnick, asserting first: that Skurnick sold securities to him by mail without complying with the registration requirements of Florida's securities statutes, and second: that Skurnick committed common law breach of fiduciary duty, fraud, deceit, and negligence in the management of Ainsworth's securities account.
Ainsworth's claim against Skurnick went before a National Association of Securities Dealers, Inc. (NASD) arbitration panel which found for the claimant, but assessed no damages. Finding the arbitrators' order vague and cursory, the district court vacated and remanded for interpretation. When an arbitration award can be interpreted in a variety of ways, it is normal to remand for clarification. San Antonio Newspaper Guild Local 25 v. San Antonio Light Div., 481 F.2d 821, 824-25 (5th Cir.1973).
The arbitrators explained that although Skurnick was found negligent, the claimant sustained no damages and proof of statutory violations were not established. On review, the district court affirmed the decision of the arbitrator, insofar as it denied damages on the common law negligence claims, but found a statutory violation in Skurnick's failure to register in Florida. The district court held that mandatory damages were required, stating that one who sells securities by mail to a person located in Florida is selling securities in Florida and must be registered in accord with Fla. Stat. § 517.12. A violation of § 517.12 automatically triggers damages under Fla. Stat. § 517.211, which gives the purchaser the option of voiding the sale and instituting an action for rescission if he still owns the security, or permits an action for damages if the security has been sold. After Ainsworth produced evidence of $54,108.78 in damages, judgment was entered against Skurnick in that amount. There appears to be no doubt that Skurnick acted as a securities dealer for Ainsworth within the meaning of Fla. Stat. § 517.021(9). It is clear under § 517.12 that one who is not registered may not sell securities in this state to persons of this state from offices outside this state, by mail or otherwise, but unless the sale is deemed to take place within the state, there can be no statutory liability.
909 F.2d at 457-58 (footnotes omitted). These facts are supplemented by appendix 2 in that opinion, which reads as follows:
RECORD SUMMARY OF SKURNICK'S ACTIVITIES IN FLORIDA
1. The article which Ainsworth read relating to Skurnick's success with small accounts appeared in Money's Worth, a New York publication.
2. Ainsworth wrote to Skurnick in his New York office after reading the magazine article.
3. In response to Ainsworth's inquiry, Skurnick wrote to Ainsworth in Florida, including an application form and a letter which Ainsworth signed, giving Skurnick authority to open a discretionary margin account and enclosing a check made to Bruns, Nordeman, Rea & Co.
4. Ainsworth completed the application form in Florida and returned it to Skurnick's New York office.
5. Monthly statements were sent to Ainsworth in Florida by the firms through which Skurnick dealt, Bruns Nordeman and Bache. Skurnick's name was prominently displayed on the statements.
6. Ainsworth is deaf and never spoke personally with Skurnick over the telephone. There were occasions when Skurnick spoke with Ainsworth's nephew. It is unclear from the record, however, whether Skurnick placed any of the telephone calls.
7. Skurnick speaks of writing letters to his clients... .
8. Skurnick testified that he wrote to Ainsworth in Florida, suggesting that he get off margin... .
9. Skurnick sent a rebate form to Ainsworth in Florida which Ainsworth returned through the mail. .. .

*906 10. Skurnick wrote letters to his clients telling them to "hold on." ...
11. Skurnick wrote to Ainsworth in Florida concerning risk-spreading through diversification.
12. Skurnick placed ads in the Wall Street Journal.

13. Over the years of doing business, various correspondence took place between Ainsworth and Skurnick.
14. Ainsworth testified that he made inquiries of Skurnick a few times and received long-hand replies through the mail... .
Id. at 462-63.
The pertinent part of section 517.12(1), Florida Statutes (1989), provides:
Registration of dealers, associated persons, investment advisors, and branch offices. 
(1) No dealer, associated person, or issuer of securities shall sell or offer for sale any securities in or from offices in this state, or sell securities in this state to persons of this state from offices outside this state, by mail or otherwise, unless the person has been registered with the department pursuant to the provisions of this section.
(Emphasis added.) This section must be read with section 517.211(1), Florida Statutes (1989), which provides, in pertinent part, that "[e]very sale made in violation of either s. 517.07 or s. 517.12 may be rescinded at the election of the purchaser."
The intent of section 517.12 is to protect purchasers and, if that section has been violated, damages are automatic in accordance with the provisions of section 517.211. The facts establish that Skurnick sold securities to Ainsworth while he was not registered in the state of Florida. The critical issue is whether under these facts the subject sales were made in Florida. Skurnick asserts that he never sold securities in Florida because he did all his business in his offices in New York and Connecticut and through brokerage houses outside of Florida. Because of the broad ramifications of the construction of this statute on the sale of securities by out-of-state brokers to Florida residents, the Eleventh Circuit Court of Appeals certified this question to us.
In determining whether the subject sales were made in Florida, the United States District Court applied our decision in Dinsmore v. Martin Blumenthal Associates, Inc., 314 So.2d 561 (Fla. 1975), which interpreted the Florida long-arm statute, section 48.193(1)(a), Florida Statutes (1975). In that case, we discussed what it meant to engage in business in Florida, stating: "The activities of the person sought ... must be considered collectively and show a general course of business activity in the State for pecuniary benefit." 314 So.2d at 564. The United States District Court held that, under that language, Skurnick was "clearly subject to the jurisdiction of Florida courts and the registration requirements of Florida apply to him." Ainsworth v. Skurnick, No. 87-6464-CIVPAINE (S.D.Fla. June 19, 1989), reprinted in Ainsworth, 909 F.2d at 462 (Appendix 1). Furthermore, the district court commented that "common sense indicates, that one who sells securities by mail to a person who is in Florida is selling securities in Florida." Id.
We agree with the United States District Court and find that the language in section 517.12 which states "sell[s] securities in this state to persons of this state from offices outside this state, by mail or otherwise," expresses a clear intent to cover this type of transaction. Skurnick argues that it was not the purpose of chapter 517 to prevent Florida investors from dealing with out-of-town brokers of their choice, who are ethically operating under the supervision of the laws of their own state. To construe this statute as suggested by Skurnick would make the language "from offices outside this state, by mail or otherwise," meaningless.
We also note the legislative history which reflects that when section 517.12 was amended by chapter 78-435, Laws of Florida, the amendment eliminated the phrase "shall engage in business" and, consequently, reduced the requisite involvement by dealers or brokers to bring them under this statute for this type of transaction. *907 See Florida and Federal Securities Regulation 181 (The Florida Bar Continuing Legal Education ed., 2d ed. 1979). We find that the statute unambiguously intended to cover brokers selling securities in this type of situation.
For the reasons expressed, we answer the question in the affirmative and return this cause to the United States Court of Appeals for the Eleventh Circuit for disposition.
It is so ordered.
SHAW, C.J., and BARKETT, GRIMES, KOGAN and HARDING, JJ., concur.
McDONALD, J., dissents.
NOTES
[1] Art. V, § 3(b)(6), Fla. Const.