David BROWN and Rita Brown, Plaintiffs,

v.

RAUSCHER PIERCE REFSNES, INC., and William H. Brashears, Defendants.

No. 91–376–CIV–T–17A.

United States District Court, M.D. Florida, Tampa Division.

April 7, 1992.

---

**498**

Stanley Theodore Padgett, Trenam, Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, P.A., Tampa, Fla., for plaintiffs.

J. Kevin Carey, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, PA, Tampa, Fla., Bruce W. Collins, Carrington, Coleman, Sloman & Blumenthal, Dallas, Tex., for defendants.

## ORDER

KOVACHEVICH, District Judge.

This cause is before the Court on plaintiffs' petition to vacate or modify the arbitration award as clarified and for entry of judgment in accordance with their damage calculations and on motions by defendants for confirmation of the arbitrators' award. Having considered the briefs and submissions of the parties, and the applicable law, the Court finds that the plaintiffs' motion is denied and defendants' motions are granted.

On November 8, 1984, David Brown opened a securities brokerage account with the Dallas, Texas office of Rauscher Pierce Refsnes, Inc. Although a Florida state resident at all times material to this action, Mr. Brown came to Rauscher Pierce when his long-time broker, Al Gilbertson, joined the Dallas brokerage firm. Thereafter, Mr. Brown pursued an aggressive strategy of seeking quick profits by acquiring large positions, on margin, primarily in rumored takeover candidates. Mr. Gilbertson continued to service the Brown account until July 1985, when he collapsed in a Dallas health club and died just days later. In the midst of this startling occurrence, Mr. Brown requested that William H. Brashears, another Rauscher Pierce broker in Dallas, continue in Mr. Gilbertson's stead. Thereafter, Mr. Brashears went about familiarizing himself with the Brown account and took over as account executive.

Continuing an aggressive profit taking strategy, Messrs. Brown and Brashears remained in constant contact, phoning one another several times daily to discuss market prospects and continually mailing various documents and confirmation tickets back and forth between Texas and Florida. Not only did Mr. Brown's high risk approach require considerable broker contact, but the constant building and divesting of large positions in target companies also necessitated a correspondingly large number of transactions in significant blocks of securities. Also, Mr. Brown's cash flow requirements regularly dictated that he liquidate certain holdings to meet current obligations. Sometime in 1988 the Brown account became a joint account with Mr. Brown's wife, Rita Brown, also a Florida resident. During their relationship, Mr. Brashears performed all the customary functions of an account executive, including making recommendations of securities transactions and providing market information, as well as placing purchase and sell orders requested by Mr. Brown.

Eventually, the Browns' high stakes approach proved perilous and they sought to apportion at least part of the blame for their losses upon Rauscher Pierce and Mr. Brashears, levying against them various allegations of churning and securities law violations. Somehow, it was discovered by the Browns that, although Rauscher and Al Gilbertson had at all times material been registered to sell securities in Florida, such was not the case with Mr. Brashears. In fact, Mr. Brashears served as account executive for the Brown account from July 1985 until July 26, 1988, without applying to the state of Florida for any type of license. Pursuant to their Customer's Agreement with Rauscher and a Uniform Submission Agreement signed by them, the Browns submitted their claims to a New York Stock Exchange (NYSE) arbitration panel and a hearing was set for February 25 and 26, 1991.

During the hearing, the Browns abandoned their churning and securities law allegations and argued *only* that Mr. Brashears' failed to register with the state of Florida in purported violation of Fla.

Stat. § 517.12[1] and that damages equating to $721,762.91 attended this violation per Fla.Stat. § 517.211.[2] Defendants countered that Mr. Brashears' mere inadvertence did not rise to a violation of the Florida statutes and that, in any event, the plaintiffs' damages calculations were incorrect. On February 26, 1991, the panel of three arbitrators issued an award in plaintiffs' favor of $16,000 in damages and $4,000 in forum fees without benefit of any explanation or rationale. Thereafter, the plaintiffs motioned this Court to vacate or modify the arbitrators' award, and, in light of the various interpretations to which it was susceptible, this Court remanded the award to the original NYSE arbitration panel for clarification. 765 F.Supp. 1082. The panel responded, *inter alia:*

> In reaching our decision, the Panel carefully considered the intent of the Florida law requiring qualification of brokers through licensing. We concluded that while Mr. Brashears failed to become licensed in Florida upon assuming this unsolicited account, his failure to do so was by oversight, rather than any effort to take advantage of his clients. We found an equal failure on the part of his Firm to supervise their own procedures adequately so that his intended licensing would be verified before any business was conducted with the Browns. For these administrative and procedural oversights the Panel found for the claimants in the amount cited in our award.

Presently, the Browns reiterate their earlier protestations by the instant motion to vacate or modify the arbitration award as clarified and again seek entry of judgment in the amount of $721,762.91. Specifically, plaintiffs allege that the arbitrators' award as clarified exhibits a failure on the part of the arbitrators to safeguard certain statutorily protected policies in their favor, and that this failure displays that the arbitrators essentially acted either irrationally, in manifest disregard of the law, or contrary to notions of important public policy.

### A. Review Standard

■ The present dispute finds its underpinnings in a statutory scheme established by Congress to promote arbitration and empower federal district courts with jurisdiction to review and enter judgment on arbitral awards. 9 U.S.C. § 1, *et seq.* (Supp.1991). Part and parcel of the authority conferred upon district courts is the power to vacate arbitrators awards, albeit, only in exceedingly limited circumstances. Specifically, 9 U.S.C. § 10 enumerates the following grounds for vacating an arbitration award:

(1) Where the award was procured by corruption, fraud, or undue means.

(2) Where there was evident partiality or corruption in the arbitrators, or either of them.

(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing ... or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10. The listed provisions illustrate the great deference provided arbitral awards, and courts generally may not va-

---

1. **517.12 Registration of dealers, associated persons, investment advisers, and branch offices.**

   (1) No dealer, associated person, or issuer of securities shall sell or offer for sale any securities in or from offices in this state, or sell securities in this state to persons of this state from offices outside this state, by mail or otherwise, unless the person has been registered with the department pursuant to the provisions of this section.

2. **517.211 Remedies available in cases of unlawful sale.**

   (1) Every sale made in violation of ... § 517.12 may be rescinded at the election of the purchaser; and the person making the sale and every director, officer, partner, or agent of or for the seller, if the director, officer, partner, or agent has personally participated or aided in making the sale is jointly and severally liable to the purchaser in an action for rescission, if the purchaser still owns the security, or for damages, if the purchaser has sold the security....

cate such awards based on errors of law or interpretation. *See, e.g., O.R. Securities, Inc. v. Professional Planning Assoc.,* 857 F.2d 742, 746 (11th Cir.1988) (citing *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953)).

■ Notwithstanding that the Supreme Court has limited vacatur of arbitrators' awards to the categories specified in 9 U.S.C. § 10, several federal courts have fashioned other grounds, emanating from the statute, for vacating awards in arbitration cases. One of these judicially crafted means allows vacatur if the arbitrators' award is arbitrary or capricious. *See, e.g., Raiford v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 903 F.2d 1410, 1412 (11th Cir.1990) (citing *United States Postal Services v. National Assoc. of Letter Carriers,* 847 F.2d 775, 778 (11th Cir.1988)). Another method provides relief when the arbitral award violates notions of public policy. *See Delta Airlines, Inc. v. Air Line Pilots Assoc.,* 861 F.2d 665 (11th Cir.1988). Still another mode grants vacatur if the arbitrators' award is found to be irrational. *See Ierna v. Arthur Murray Int'l, Inc.,* 833 F.2d 1472 (11th Cir.1987); *French v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 784 F.2d 902, 906 (9th Cir.1986); *Drummond Coal Co. v. United Mine Workers of Am., Dist. 20,* 748 F.2d 1495, 1497 (11th Cir.1984). Also, an oft-discussed alternative involves vacating awards where the arbitrators acted in manifest disregard of the law. *See, e.g., Advest, Inc. v. McCarthy,* 914 F.2d 6 (1st Cir.1990) (finding the standards underlying the various judicially created formulations as practically identical); *see also Jenkins v. Prudential–Bache Securities, Inc.,* 847 F.2d 631 (10th Cir. 1988); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker,* 808 F.2d 930 (2d Cir.1986).

The latter of these non-statutory grounds, vacatur premised upon the arbitrators' purported manifest disregard of the law, has received considerable attention by the Eleventh Circuit as of late. The basis for this alternative traces its origins to the Supreme Court's opinion in *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), where the Court stated:

[w]hile it may be true … that a failure of the arbitrators to decide in accordance with the provisions of the [respective law] would 'constitute grounds for vacating the award pursuant to section 10 of the Federal Arbitration Act,' that failure would need to be made clearly to appear…. [T]he interpretations of the law by the arbitrators in contrast to manifest disregard are not subject, in the federal courts, to judicial review for error in interpretation.

*Wilko,* 346 U.S. at 436–37, 74 S.Ct. at 187–88, 98 L.Ed. at 176 (citation omitted).

The Eleventh Circuit took up discussion of this newly burgeoning prospect for federal court review of arbitral awards in *O.R. Securities, Inc. v. Professional Planning Assoc.,* 857 F.2d 742. In that case, after the arbitration panel rendered an award devoid of any explanation, O.R. argued that the arbitrators' silence, combined with its failure to rule on certain motions, reflected an award that was in manifest disregard of the law, was arbitrary and capricious, was irrational, and was contrary to public policy. Noting that the Eleventh Circuit had never adopted the manifest disregard standard, the court recognized that generally "[m]anifest disregard 'may be found when arbitrators understand and correctly state the law, but proceed to disregard the same.'" *Id.* at 747 (quoting *Stroh Container Co. v. Delphi Industries, Inc.,* 783 F.2d 743, 750 (8th Cir.), *cert. denied,* 476 U.S. 1141, 106 S.Ct. 2249, 90 L.Ed.2d 695 (1986)).

Molding this general rule to the facts at hand, an absence of any discussion by the arbitrators beyond the mere award, the circuit court stated that "to vacate an arbitration award on the basis of a manifest disregard of the law … there must be some showing in the record, other than the result obtained, that the arbitrators knew the law and expressly disregarded it." *Id.* However, finding the record before it devoid of any such circumstance, the court denied the motion to vacate and expressly declined to adopt the manifest disregard standard.

Subsequently, the Eleventh Circuit revisited the manifest disregard of the law standard in *Raiford v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 1410. In *Raiford*, the plaintiffs moved the district court to vacate or modify an arbitrators' award of $10,000.00. Arguing that their claims centered upon their broker's purported churning in violation of securities laws, plaintiffs asserted that such claims typically result in much greater damages than the $10,000.00 actually awarded, and attested that this professed discrepancy exhibited arbitral misconduct. Finding the limited statutory methods of arbitration vacatur inapplicable, the court turned its attention to the manifest disregard of the law standard. Discussing this standard, the court stated:

> To prove that an arbitrator manifestly disregarded the law, a party must show (1) that the error is so obvious that it would be 'readily and instantly perceived' by a typical arbitrator, and (2) that the arbitrator was subjectively aware of the proper legal standard but proceeded to disregard it in fashioning the award. [citation omitted]. Furthermore, the knowing disregard of the law must be apparent on the face of the record.

*Id.* at 1412–13 (citing *O.R. Securities, Inc. v. Professional Planning Assoc.*, 857 F.2d 742, 747 (11th Cir.1988)).

The court continued, however, by noting that the Eleventh Circuit had never adopted the manifest disregard standard, and even recognized that some doubt existed that it ever would. Once again declining to expressly adopt the manifest disregard of the law standard, the court concluded its opinion by stating "[w]hen the parties agreed to submit to arbitration, they also agreed to accept whatever reasonable uncertainties might arise from the process." *Id.*

Following on the heels of its decision in *Raiford*, the Eleventh Circuit rendered its opinion in a case arguably similar to the dispute at hand. In *Ainsworth v. Skurnick*, 909 F.2d 456 (11th Cir.1990), the Court of Appeals reviewed an order out of the Southern District of Florida vacating an arbitration award and entering judgment in the petitioner's favor based upon a finding that the arbitrators acted in manifest disregard of the law. The petitioners in *Ainsworth* alleged that Skurnick, a broker registered in New York, was negligent in handling their account, breached fiduciary duties, acted fraudulently, and sold securities by mail from offices in that state to petitioner in Florida while not registered in compliance with Fla.Stat. § 517.12. Although the arbitrators found in favor of the claimant, the panel did not assess any damages. Finding the panel's directive to be vague and cursory, the district court remanded it back to the arbitrators for clarification. Thereafter, the arbitrators explained that although Skurnick acted negligently, the claimant suffered no damages and no statutory violations were proven.

On subsequent review, the district court upheld the arbitrators' denial of damages regarding the common law negligence allegations, but found that the record clearly exhibited a violation of Fla.Stat. § 517.12. In so finding, the district court outlined the elements of § 517.12 and then set about reviewing the arbitration transcript to determine if the various elements appeared.[3] As the court divined the sundry statutory factors, its determination regarding two of the elements are of particular interest.

First, in finding that Skurnick was a "seller" of securities within the meaning of the statute, the court utilized a test applicable to Section 12(1) of the Securities Act of 1933. Under this test the court emphasized Skurnick's discretionary authority over the Ainsworth account, and ruled that since the decision whether to buy or sell rested with Skurnick, he could clearly be considered a statutory seller of securities. Second, the district court borrowed from Fla.Stat. § 48.193(1)(a), Florida's long-arm statute, to determine that the subject sales by Skurnick were made in Florida, thus fulfilling an important requirement of § 517.12.

---

**3.** See *supra* note 1 for statutory elements of § 517.12.

Finding, based upon its own review of the record, that Skurnick violated § 517.12, the district court stated "[b]ecause the arbiters found otherwise, this Court will vacate its [sic] ruling as being in manifest disregard of the law." *Ainsworth,* 909 F.2d at 462. As precedential support for this ruling, the district court did not rely on any Eleventh Circuit decision, but instead cited the Ninth Circuit's opinion in *Sheet Metal Workers International v. Kinney Air Conditioning Co.,* 756 F.2d 742 (9th Cir.1985). Following its vacatur of the arbitrators' award, the district court proceeded to find damages in the amount of $54,-108.78 owing to the claimant under the mandatory damages provision of Fla.Stat. § 517.211 and supported by expert testimony appearing in the arbitration record.

On appeal, after outlining the relevant facts in *Ainsworth,* the Eleventh Circuit said "[t]he district court had no difficulty with the issues in this case, nor do we, until confronting the issue of whether the subject sales were made in Florida." *Ainsworth,* 909 F.2d at 458. Acknowledging that it found no Florida precedent controlling this issue, the circuit court certified to the Florida Supreme Court the question of whether the sales in issue occurred in Florida within the meaning of § 517.12.[4]

Notably, in its per curiam opinion, the Eleventh Circuit never expressly mentioned the district court's vacatur of the arbitration award on manifest disregard of the law grounds. Instead, the circuit court limited its discussion only to the issues surrounding § 517.12. Thus, the circuit court's declaration that the issues in *Ainsworth* presented it with little difficulty raised a cloud of uncertainty around whether the Eleventh Circuit had, or would, adopt the manifest disregard standard for vacating arbitrators' awards.

However, any questions regarding the current viability of the manifest disregard standard in the Eleventh Circuit, and the degree of deference provided arbitrators' awards, appear to have been answered in the recent case of *Robbins v. Day,* 954 F.2d 679 (11th Cir.1992). In *Robbins* the plaintiffs alleged that their brokers engaged in fraudulent mismanagement of several securities brokerage accounts in violation of, *inter alia,* Alabama state securities laws and federal RICO (Racketeer Influenced and Corrupt Organizations) provisions. Upon submitting the dispute to arbitration, the panel awarded the plaintiffs a lump sum award of $325,000.00, but apparently provided no explanation for the award beyond stating that no RICO violations were discovered.

On review, the district court stated "[t]he critical fact is that by this award the panel acknowledged the occurrence of wrongdoing on the part of the defendants.... In making its award, the panel by necessity had to have found fraud. The record on its face supports a finding of fraud and deceit." *Robbins v. PaineWebber, Inc.,* 761 F.Supp. 773, 777 (N.D.Ala.1991) (footnote omitted), *rev'd,* 954 F.2d 679 (11th Cir. 1992). The district court found the fraud looming in the record to be prohibited by the Alabama Securities Act, and ruled that the arbitrators failure to apply a mandatory damages provision, and an attorney's fees section, supplied by the Act constituted a manifest disregard of the law. Consequently, the district court vacated the arbitration panel's award and reinstated the case as a civil action.

■ However, in reversing the district court's decision in *Robbins,* the Eleventh Circuit seemingly aimed to rein in district courts tempted to buck traditional maxims and too hastily venture off on non-statutory grounds for vacating arbitrators' awards. Announcing a dual standard for reviewing district court rulings on arbitration awards, the circuit court declared that a relatively narrow abuse of discretion standard will govern scrutiny of district court confirmations of arbitrators' awards, because confirmation implicitly affords arbitrators with suitable deference. Alternatively, the Eleventh Circuit will analyze a

---

**4.** In *Skurnick v. Ainsworth,* 591 So.2d 904 (Fla. 1991), the Florida Supreme Court ruled that Skurnick's activities constituted a sale of securi-

ties in Florida pursuant to § 517.12, answering the certified question in the affirmative.

district court's granting of a motion to vacate on the much more intrusive de novo standard of appellate review. The court explained that:

> [b]y reversing a district court's denial of a motion to vacate an arbitration award only upon abuse of discretion, we further the presumption that the arbitration proceeding was proper. Similarly, when a district court goes against the presumption that it should affirm an arbitration award, we must review de novo to protect the integrity of the arbitration process.

*Robbins*, 954 F.2d at 682. The installation of this dual standard for reviewing a district court's ruling on an arbitration award subtly illustrates the great respect this circuit affords arbitrators' awards.

■ Further evidencing this measure of respect are the limits the *Robbins* decision placed upon district court use of non-statutory grounds for vacating arbitrators' awards. Specifically discussing the manifest disregard standard, the Eleventh circuit recognized the inconsistency with which courts apply the model. Particularly, some courts will infer an arbitrator's correct understanding of the law, while others require this understanding to literally appear in the record. *See, e.g., Advest*, 914 F.2d at 10 (court may assume arbitral understanding if governing law possessed pristine clarity and unrefuted applicability); *Delphi*, 783 F.2d at 750 (manifest disregard appears where arbitrators understand and correctly state the law but then ignore it). Instead of wading into the fray, the court explained that by "[f]ollowing Eleventh Circuit precedent, we decline to adopt the manifest disregard of the law standard." *Id.* at 684. (citing *Raiford v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 1410, 1412 (11th Cir.1990)). Thus, the question of the manifest disregard standard's current viability in this circuit appears to be settled for the time being.

■ Notwithstanding, the *Robbins* court did not completely nullify the prospect of vacating arbitration awards on non-statutory grounds. Rather, the Eleventh Circuit set up what may best be described as a hierarchy or condition precedent to a district court's utilization of judicially created means of arbitration vacatur.[5] Erecting this new standard, the court declared "[o]nly after it is determined that there could be no proper basis for the award, should a court consider looking beyond the statute to determine the applicability of court made standards for the vacatur of an arbitration award." *Id.* Therefore, following the edict propounded by the Eleventh Circuit in *Robbins*, it seems that a district court considering vacatur of an arbitration award should proceed along a slender and carefully defined path.

Initially, the district court should look to the narrow provisions of 9 U.S.C. § 10. Finding no arbitral misconduct as proscribed by the statute, the court may then turn its attention to ascertaining if, after reviewing the record, it appears that there exists "no proper basis for the award." Only upon making this determination is the district court then free to consider the applicability of judicially crafted grounds for arbitration vacatur. Such an approach comports with the presumption favoring arbitrators' awards and the concomitant limited review power of federal courts. *See Booth v. Hume Publishing, Inc.*, 902 F.2d 925, 932 (11th Cir.1990) (confirmation of arbitrator's award is presumed and district court review severely limited).

### B. *Proper Basis*

■ Applying this hierarchy to the case at hand is fairly straight forward, with the exception of divining just exactly what the circuit court meant by the term "proper basis." The first stage of the circuit court's hierarchy, looking to the provisions of 9 U.S.C. § 10, presents no difficulty here, because no statutory violation was alleged by the claimants and none appears in this Court's review of the arbitration record. However, turning now to the second stage, determining if there could be no

---

**5.** Although the court's discussion on this issue focused upon arbitration awards silent as to their rationale, as a fortiori the analysis utilized applies equally to cases involving arbitration awards uncertain in their rationale, as appears herein.

"proper basis" for award, the issue arises as to what is meant by this phrase.

It could be argued that the circuit court's usage of the phrase should be seen as meaning "correct basis." Such a reading would permit non-statutory grounds for vacatur to be investigated when there could be no "correct basis" for the award. Thus, arbitration awards reflecting a bungled or erroneous application of law and precedent, like a misinterpreted statute, could be challenged and possibly vacated on non-statutory grounds. However, it is axiomatic, as noted within the *Robbins* opinion itself, that courts are proscribed from vacating arbitrators' awards on the basis of errors of law or interpretation. *Robbins*, 954 F.2d at 683. *See also, Wilko v. Swan*, 346 U.S. at 436–37, 74 S.Ct. at 187–88, 98 L.Ed. at 176; *Advest*, 914 F.2d at 8; *Professional Planning Assoc.*, 857 F.2d at 746. Moreover, reading the phrase "proper basis" in this manner would allow for greater judicial review of arbitration awards, a result antithetical to the *Robbins* court's apparent mission.

Alternatively, a more reasoned and fitting usage of the "proper basis" terminology is to view it as meaning something akin to "justifiable basis." Under this interpretation, non-statutory grounds for vacating arbitration awards could be investigated only after determining that there could be no "justifiable basis" for the award. By such a reading of the language in *Robbins*, this Court is not aiming to supplant the circuit court's "proper basis" terminology, but rather attempting to explain what that wording means. It is evident that, in formulating the "proper basis" standard, the circuit court presupposed the significant deference afforded arbitrators' awards, and focused not upon reviewing the accuracy or merits of the arbitrators' cognition or reasoning, but rather upon examining their awards for evidence of overt misconduct or impartiality.

Specifically, the court immediately preceded its statement of the "proper basis" standard by noting the presumption in favor of arbitration awards and acknowledging a burden upon the party seeking vacatur to discredit "every rational basis upon which the arbitrator could have relied." *Robbins*, 954 F.2d at 684 (citing *Schmidt v. Finberg*, 942 F.2d 1571 (11th Cir.1991)). Moreover, the *Robbins* opinion placed considerable emphasis upon the constraints 9 U.S.C. § 10 ensconced upon the landscape of arbitration vacatur, as well as the importance of preserving arbitration as a speedy and economical alternative to the courts. *Robbins*, 954 F.2d at 682 ("The Congressional policy of promoting contractually imposed arbitration requires that courts do not intrude unnecessarily into questions settled by arbitration, lest the efficiency of the arbitration process be lost.") (citation omitted). Also, the Eleventh Circuit had earlier described a district court's power to vacate an arbitration award as limited to "those rare instances when the arbitrators commit an egregious error, make an irrational award, or exceed a specific contractual limitation on the scope of their authority." *Ierna v. Arthur Murray Int'l, Inc.*, 833 F.2d 1472, 1476–77 (11th Cir.1987) (citation omitted).

▊ Consequently, this Court rules that the phrase "proper basis," as utilized by the Eleventh Circuit in the framework of arbitration vacatur, should be read in context with the limitations inherent in 9 U.S.C. § 10 and as embracing only those peculiar instances when the arbitration award exhibits egregious error, arbitral misconduct, or usurpation of arbitral authority. Accordingly, after examination of the record in the instant case, including an independent review of the arbitration transcript, the Court finds the current dispute does not present one of those rare instances where there could be no "proper basis" for the arbitration award.

Specifically, in their clarified award the arbitrators expressly recognized that Mr. Brashears failed to register in Florida, albeit on grounds of mere oversight, and proceeded to grant $16,000.00 in damages and $4,000.00 in costs to the Browns by reason of this blunder. One of two conclusions regarding the arbitrators' rationale appear from analysis of the award as clarified. First, although Mr. Brashears did not

register as a broker or associated person in Florida, the arbitrators' must have believed such oversight did not violate the provisions of Fla.Stat. § 517.12 and awarded damages on account of defendants' carelessness. Alternatively, the arbitrators' found Mr. Brashears' failure to register in Florida did indeed constitute a violation of § 517.12, but determined that the Browns' damages equated to only $16,000.00.

As regards there existing no "proper basis" for the first of these apparent conclusions, the Court is inclined to disagree. Initially, it should be noted that no impartiality or arbitral misconduct appears on the face of the record and none was alleged by either party. In fact, everyone concerned expressed appreciation to the arbitrators for their attentiveness and efforts to conduct a complete and fair hearing. Instead, any allegations of impropriety levelled against the arbitrators center upon their purported failure to render an award consistent with law or public policy. Although it is now settled that Mr. Brashears's conduct would likely constitute a violation of § 517.12, at the time of the arbitration hearing the clarity of the law and its applicability were far from pristine. In fact, counsel for the defense advanced to the non-lawyer arbitration panel a fairly cogent argument in favor of interpreting § 517.12 as regulating only out of state securities sellers when those sellers engaged in "boiler room" type operations.[6]

Indeed, in *Ainsworth* the Eleventh Circuit itself noted the lack of any state precedent illuminating the provisions of § 517.12, and certified an issue pertaining to the statute's extra-territoriality to the Florida Supreme Court for determination. Not only was the Florida Court's decision still pending upon rendition of the arbitration award, but the arbitrators were advised of the fact that the federal district court's *Ainsworth* decision comprised merely persuasive, as opposed to binding, authority on the interpretation of Fla.Stat. 517.12. Also, in the award as clarified, the arbitrators exhibited not an intent to flaunt the law, but rather an effort to heed statutory mandates. This purpose appears in the arbitration panel's declaration that, in fashioning the award, "the panel carefully considered the intent of Florida law requiring qualification of brokers through licensing." In view of the foregoing, the Court cannot say that the arbitration panel engaged in any misconduct, usurped its authority, or committed any egregious error. The worst that can be inferred from the record is that the arbitrators simply misinterpreted the reach and meaning of § 517.12, and vacatur based upon such errors of law or interpretation exceeds this Court's power. *See, e.g., Robbins*, 954 F.2d at 683; *Professional Planning Assoc.*, 857 F.2d at 746. *See also Advest*, 914 F.2d at 9 (" '[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' a court's conviction that the arbitrator made a serious mistake or committed grievous error will not furnish a satisfactory basis for undoing the decision.") (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 371, 98 L.Ed.2d 286 (1987)).

Thus, the Court finds that the instant dispute does not present one of the rare instances where there could be no "proper basis" for the arbitration award, and having found a lack of impropriety on the part of the arbitrators, further examination of the award would simply be duplicitous and unnecessary. Viewing the Eleventh Circuit's edict in *Robbins* as a bellwether, the Court predicts an impending bear market on the legal horizon for judicially created

---

**6.** The defendant essentially maintained that § 517.12 was not intended to regulate out of state securities dealers to the same degree as in-state brokers. Specifically, the defendant contrasted the statutory language "sell or offer for sale," modifying "in or from offices in this state," with the statute's provision that those in offices outside Florida must "sell securities in this state to persons of this state." This deletion of the "offer for sale" language as applied to offices outside of Florida, defendant argued, was intended by the Legislature to limit liability under the long-arm reach of § 517.12 to only those out of state operators actually selling securities from their own inventory, like unscrupulous sellers of fractional oil interests in the 1970's, as opposed to regulating every broker acting as an agent for an in-state buyer. (transcript pp. 24–32).

506

means of arbitration vacatur and declines the defendants' invitation to invest in this speculative venture at the current time.

Consequently, finding no grounds existing upon which to vacate the arbitrators award in the present cause, the Court rules that the motion to vacate the award upon non-statutory grounds is denied. The plaintiffs neither objected to the composition of the arbitration panel, nor the conduct of the hearing, nor alleged any arbitral misconduct or impartiality. Rather, they merely asserted that the outcome was erroneous. However, as succinctly articulated by the Eleventh Circuit, "[w]hen the parties agreed to submit to arbitration, they also agreed to accept whatever reasonable uncertainties might arise from the process." *Raiford,* 903 F.2d at 1413. The Court believes its decision to comport with the considerable deference afforded arbitrators' awards in this circuit, while advancing the significant policy interests in maintaining arbitration as a relatively swift and inexpensive means of dispute resolution. Accordingly, it is

ORDERED that plaintiffs' motion to vacate or modify arbitration award as clarified and for entry of judgment be denied; defendants' motion to confirm arbitration award as clarified and for entry of judgment in the amount of $16,000.00 in damages plus $4,000.00 in costs be granted; and this cause be dismissed.

DONE and ORDERED.